IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN ZESIGER and GINA ZESIGER,

    Plaintiffs,

    v.

LEAVENWORTH COUNTY, KANSAS,

    Defendant.

Case No. 2:25-CV-02323-JAR-RES

**MEMORANDUM AND ORDER**

    Plaintiffs Bryan Zesiger and Gina Zesiger, proceeding *pro se*, filed this removal action against Defendant Leavenworth County, Kansas, alleging that Defendant mishandled and retained Plaintiffs' confidential records in violation of Kansas law and the U.S. Constitution. This matter is now before the Court on Defendant's Motion to Dismiss (Doc. 4) under Fed. R. Civ. P. 12(b)(5) and 12(b)(6). Plaintiffs have not filed a response, and the time to do so has expired.[1] For the reasons stated below, the Court grants Defendant's motion. However, the Court also grants Plaintiffs leave to amend to cure the pleading deficiencies identified in this Order and grants Plaintiffs an extension of time to effect proper service.

**I.**     **Background**

    Plaintiffs filed this action in the District Court of Leavenworth County, Kansas on May 16, 2025. The following facts are alleged in Plaintiffs' Petition.[2] For the purpose of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Plaintiffs' favor.

---

[1] *See* D. Kan. R. 6.1(d)(1) (providing a 21-day response deadline for dispositive motions).

[2] Doc. 1-1.

Between 2018 and 2022, Plaintiffs submitted confidential documents to Defendant for regulatory compliance, including an Internal Revenue Service ("IRS") Schedule F form and a business plan. On April 23, 2025, a Planning & Zoning employee identified as "Melissa" returned the original business plan to Plaintiffs in a sealed envelope in a public hallway and stated it had been kept "in the vault since 2019."[3] Plaintiffs had no prior notice that Defendant had retained the business plan. Defendant continues to possess the IRS Schedule F form and has not provided Plaintiffs with a chain-of-custody record, deletion log, or list of responsible staff. Plaintiffs requested an investigation into the handling of these records, which Defendant denied without explanation.

Liberally construing the Petition, as the Court must,[4] Plaintiffs assert three claims under 42 U.S.C. § 1983: (1) denial of access to the courts; (2) infringement of informational privacy; and (3) violation of the First Amendment right of association. Plaintiffs also assert three state-law claims: (1) violations of §§ 1 and 15 of the Kansas Bill of Rights; (2) violation of the Kansas Open Records Act ("KORA"); and (3) injunctive relief under K.S.A. § 60-901. Plaintiffs served the Petition on Becky Matzeder, the Executive Secretary of the Leavenworth County Board of County Commissioners, on May 20, 2025. On June 13, 2025, Defendant removed the case to this Court under 28 U.S.C. §§ 1331, 1441, 1443, and 1446. Defendant now moves to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(5) and 12(b)(6).

---

[3] *Id.* ¶ 3.

[4] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

## II. Standard

### A. Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[5] and include "enough facts to state a claim to relief that is plausible on its face."[6] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[7] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8] The Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9] The Court will view all well-pleaded factual allegations in the light most favorable to Plaintiffs.[10] And because Plaintiffs proceed *pro se*, the Court must construe their filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys.[11] However, Plaintiffs' *pro se* status does not excuse them from complying with federal and local rules.[12]

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[6] *Id.* at 570.

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Ogden v. San Juan County.*, 32 F.3d 452, 455 (10th Cir. 1994); *see* D. Kan. Rule 83.5.4(f) ("Any party appearing on his or her own behalf without an attorney is expected to read and be familiar with the Rules of Practice and Procedure of this court [and] the relevant Federal Rules of Civil Procedure . . . .").

### B. Rule 12(b)(5): Insufficient Service of Process

When a defendant moves to dismiss on the basis of insufficient service of process, "the burden shifts to the plaintiff to make a prima facie showing that they served process properly."[13] In ruling on a Rule 12(b)(5) motion to dismiss, the court "may consider any 'affidavits and other documentary evidence' submitted by the parties and must resolve any 'factual doubt' in a plaintiff's favor."[14]  "A *pro se* plaintiff still must comply with Rule 4 and Kansas law for service of process."[15]

## III. Discussion

### A. Failure to State a Claim

The Court begins with Defendant's Rule 12(b)(6) arguments directed at Plaintiffs' federal claims. Specifically, the Court considers: (1) whether "Leavenworth County, Kansas" has the capacity to be sued under Kansas law; (2) whether the Petition plausibly alleges a constitutional violation cognizable under 42 U.S.C. § 1983; and (3) whether Plaintiffs plead a viable basis for municipal liability. As explained below, the Court finds that Plaintiffs have failed to state a claim on their federal theories. Accordingly, the Court does not reach Defendant's arguments directed at Plaintiffs' state-law claims.

#### 1. "Leavenworth County, Kansas" lacks the capacity to be sued under Kansas law

Under Fed. R. Civ. P. 17(b)(3), courts determine a party's capacity to be sued in federal court by examining the law of the state where the court is located. K.S.A. § 19-105 requires: "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be

---

[13] *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2016 WL 4039613, at *3 (D. Kan. July 28, 2016) (citing *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).

[14] *Id*. (quoting *Fisher*, 531 F. Supp. 2d at 1260).

[15] *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1228 (D. Kan. 2016).

sued shall be 'The board of county commissioners of the county of _____[.]'" Here, Plaintiffs name "Leavenworth County, Kansas" itself as the Defendant in this case instead of the Board of County Commissioners of Leavenworth County, as Kansas law requires.  Accordingly, because "Leavenworth County, Kansas" is not a legal entity with the capacity to be sued, Plaintiffs' claims against Defendant fail to state a claim for relief.

2. **§ 1983 Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[16]  In support of their § 1983 claims, Plaintiffs cite two Supreme Court decisions: "Christopher v. Harbury, 536 U.S. 403 (2002): [i]ntentional suppression of documents interfering with court access is unconstitutional," and "Nixon v. Administrator, 433 U.S. 425 (1977): [g]overnment custody of private materials must meet strict scrutiny."[17]

As to *Christopher*, the Court understands Plaintiffs to assert a denial-of-access-to-courts claim.  As to *Nixon*, however, it is unclear what claim Plaintiffs intend to advance.  *Nixon* adopted no categorical rule that mere government custody of private materials must satisfy strict scrutiny.  In *Nixon*, former President Nixon challenged the Presidential Records and Materials Preservation Act on five constitutional theories, arguing that the Act violated: (1) the separation of powers; (2) presidential privilege; (3) the president's information privacy interest; (4) the First Amendment freedom of association; and (5) the Bill of Attainder Clause.[18]  To the extent Plaintiffs are relying on *Nixon* to state a claim, the Petition does not allege any facts that

---

[16] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[17] Doc 1-1 pt. IV.B.

[18] *Nixon v. Adm'r. of Gen. Servs*, 433 U.S. 425, 429 (1977).

5

implicate the separation-of-powers, presidential-privilege, or bill-of-attainder theories; thus, the Court confines its analysis to informational privacy and the First Amendment right of association.

Accordingly, while liberally construing the Petition, the Court treats Plaintiffs' § 1983 theories as consisting of: (1) denial of access to the courts; (2) infringement on informational privacy; and (3) violation of the First Amendment freedom of association. The Court addresses each of these in turn.

### a. Denial of Access to Courts

To state a plausible claim for unconstitutional denial of access to the courts, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded by the official act or acts that interfere with access to the courts.[19] The underlying claim is an element that must be described in the complaint as though it were being independently pursued.[20] In other words, the underlying claim must be described well enough to permit evaluation of whether it is "nonfrivolous" and "arguable."[21]

Here, Plaintiffs do not identify any underlying claim in their Petition: they do not state against whom a claim would be brought, in what forum, or what relief is sought, nor do they allege any of the purported facts giving rise to any such claim. Merely alleging that "[i]ntentional suppression of documents interfering with court access is unconstitutional"[22] does not satisfy the requirement to plead the underlying claim "as though it were being independently

---

[19] *See Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).

[20] *Id.* at 404.

[21] *Id.* at 414–16.

[22] Doc 1-1 pt. IV.B.

pursued," nor does it allow the Court to evaluate whether any such claim is "nonfrivolous" and "arguable."[23]

Nor do Plaintiffs allege any facts showing how Defendant's alleged retention of their confidential documents, Defendant's return of their business plan in a public hallway, or Defendant's refusal to investigate or provide chain-of-custody records "frustrated or impeded" Plaintiffs' efforts to pursue any specific claim. Plaintiffs thus fail to state a plausible unconstitutional denial-of-access-to-the-courts claim.

### b. Informational Privacy

To state a plausible informational-privacy claim, Plaintiffs must first allege facts showing that the information is entitled to a legitimate expectation of confidentiality.[24] "Information falls within the ambit of constitutional protection when an individual has a 'legitimate expectation . . . that it will remain confidential while in the state's possession.'"[25] The legitimacy of the individual's expectation depends, at least in part, on "the intimate or otherwise personal nature of the material which the state possesses."[26] "If an individual has a legitimate expectation of confidentiality, then '[d]isclosures of such information must advance a compelling state interest, which, in addition must be accomplished in the least intrusive manner.'"[27]

Turning to the first question—whether Plaintiffs have alleged sufficient facts giving rise to a plausible claim that they are entitled to a legitimate expectation of confidentiality. Plaintiffs allege only that they "submitted confidential documents, including an IRS Schedule F and [a]

---

[23] *See Christopher*, 536 U.S. at 414–16.

[24] *Moore v. Kobach*, 359 F. Supp. 3d 1029, 1049 (D. Kan. 2019).

[25] *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir. 1995) (citing *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986)).

[26] *Id.* (quoting *Mangels*, 789 F.2d at 839).

[27] *Id.* (quoting *Mangels*, 789 F.2d at 839) (further citations omitted).

detailed Z&M Twisted Vines business plan, to Leavenworth County between 2018 and 2022 for regulatory compliance."[28]  Plaintiffs cite to no authority supporting the proposition that "business plans" or IRS Schedule F forms, as a category, implicate a legitimate expectation of confidentiality.  Nor do Plaintiffs allege any facts that any of these documents contained any personal information that is "highly personal and intimate" to trigger an expectation of confidentiality, such as social security numbers, dates of birth, home addresses, or financial information.  While the Court acknowledges that an IRS Schedule F form is a tax-related document and likely contains sensitive information, the "Court may not speculate on what facts might exist that could possibly entitle [P]laintiff[s] to relief."[29]

In any event, even if Plaintiffs had alleged facts supporting a legitimate expectation of confidentiality in either document, the Petition does not plausibly allege a disclosure.  The Petition alleges that on April 23, 2025, a county employee returned the original business plan to Plaintiffs in a sealed envelope in a public hallway, that the employee stated the plan had been kept "in the vault since 2019," and that Defendant continues to possess the Schedule F without providing Plaintiffs with a chain-of-custody or deletion log.[30]  These allegations do not allege that Defendant disclosed Plaintiffs' private information to third parties or otherwise exposed it.  Absent any factual allegations of a disclosure, Plaintiffs fail to state a plausible informational-privacy claim.

---

[28] Doc 1-1 ¶ 1.

[29] *Patrick v. City of Overland Park*, 937 F. Supp. 1491, 1497 (D. Kan. 1996) (citing *Haverkamp v. Unified Sch. Dist. No. 380*, 689 F. Supp. 1055, 1060 (D. Kan. 1986)).

[30] Doc 1-1 ¶¶ 2–4.

### c. First Amendment Freedom of Association

The First Amendment does not explicitly enumerate the right to freedom of association, but the Supreme Court has held that it protects such a right in certain circumstances.[31] Among these are the right to "enter into and maintain certain intimate human relationships,"[32] including "family relationships, which by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life."[33] The First Amendment also protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion."[34] Government action that restricts a person's ability to associate in these ways must face strict judicial scrutiny.[35] Even beyond direct restrictions of these associational rights, First Amendment protections are triggered by "[t]he risk of a chilling effect on association 'because First Amendment freedoms need breathing space to survive.'"[36]

Here, Plaintiffs allege no facts that Defendant directly restricted their ability to maintain intimate relationships or to associate for protected First Amendment purposes—speech, assembly, petition, or religious exercise. Plaintiffs' allegations concern document handling and the denial of an investigation, but they do not connect those events to any restriction on

---

[31] *City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989).

[32] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

[33] *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1188 (10th Cir. 1985) (quoting *Roberts*, 468 U.S. at 620).

[34] *Roberts*, 468 U.S. at 618.

[35] *See Stranglin*, 490 U.S. at 23 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973)).

[36] *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618–19 (2021) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

association.  Nor do they allege facts suggesting even a risk of a chilling effect, such as any change in their expressive or associational activities attributable to Defendant's conduct. Accordingly, to the extent the Petition asserts a First Amendment freedom-of-association claim, Plaintiffs fail to plausibly state a claim.

### 3. Municipal Liability

Even if Plaintiffs could state an underlying constitutional violation, a municipality may not be held liable under § 1983 solely because its employees caused injuries to a plaintiff.[37] Rather, municipal liability under § 1983 exists only when a plaintiff establishes (1) an official policy or custom,[38] (2) that caused their civil rights injury, and (3) deliberate indifference by the government entity.[39]

Here, Plaintiffs' allegations that (1) the business plan was kept in Defendant's vault since 2019 without Plaintiffs' knowledge, (2) "Melissa" returned their business plan in a sealed envelope without documentation in a public hallway on April 23, 2025, and (3) Defendant continues to possess the IRS Schedule F form without providing a chain-of-custody, deletion log, or staff list, do not describe an official policy or custom.  Plaintiffs allege no facts showing that any of these acts were taken pursuant to a formal policy, reflected a widespread and well-settled practice, were made by a final policymaker, or resulted from a failure to adequately train or supervise employees amounting to deliberate indifference.

---

[37] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

[38] An official policy or custom includes: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

[39] *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

However, Plaintiffs do allege that Defendant, acting through its designated KORA officer and County Counselor, Misty Brown, denied Plaintiffs' request for an investigation into the handling of their documents without explanation. This allegation plausibly alleges an official policy or custom because "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."[40]

Nevertheless, Plaintiffs still fail to allege facts connecting the denial of the requested investigation to a constitutional injury. As discussed, the Petition states only in conclusory terms that "[i]ntentional suppression of documents interfering with court access is unconstitutional," and "[g]overnment custody of private materials must meet strict constitutional scrutiny."[41] Nor do Plaintiffs allege facts from which deliberate indifference by Defendant can be plausibly inferred. Absent factual allegations of causation and deliberate indifference, Plaintiffs fail to state a plausible claim for municipal liability.

### 4. State-Law Claims

Having concluded that Plaintiffs fail to state any federal claim over which the Court has original jurisdiction, the Court turns to the status of the remaining state-law claims. Where, as here, the federal claims are subject to dismissal under Rule 12(b)(6), a court has discretion over whether to exercise supplemental jurisdiction.[42] And in this sort of case, the Supreme Court has instructed courts generally to decline to exercise it.[43] Even so, there are exceptions to the general rule. The Tenth Circuit has directed courts to "consider and weigh in each case, and at every

---

[40] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

[41] Doc 1-1 pt. IV.B.

[42] 28 U.S.C. § 1367(c)(3).

[43] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *accord. King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018).

stage of the litigation, the values of judicial economy, convenience, fairness, and comity" when determining whether to exercise supplemental jurisdiction.[44]

Here, the factors confirm that the Court should decline to exercise supplemental jurisdiction. Plaintiffs' federal claims are being dismissed at the pleading stage and before any discovery has taken place. All the parties are Kansas residents. Resolution of the claims would require the Court to take substantive positions on Kansas state law. And nothing about the state law claims implicate federal interests or bear on federal policy issues. The Court, in its discretion, therefore declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court does not reach Plaintiffs' state-law claims at this time and expresses no view on whether Plaintiffs have stated any viable claim under Kansas law.

### 5. Amended Complaint Required

In light of the above, the Court concludes that Plaintiffs' federal claims are subject to dismissal under Rule 12(b)(6) because the Petition does not state a plausible claim for relief. However, a *pro se* litigant is generally entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect.[45] Because Plaintiffs proceed *pro se* and amendment may cure at least some of the defects cited above, the Court will grant Plaintiffs an opportunity to amend to remedy the deficiencies identified in this Order. As such, Plaintiffs must file an amended complaint within twenty-one days of this Order. Failure to file an amended complaint within this time will result in dismissal of this action without further notice. The Court notes that, in the event Plaintiffs fail to timely file an amended complaint and the Court dismisses Plaintiffs' § 1983 claims—the claims in

---

[44] *King*, 899 F.3d at 1154.

[45] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

which the Court has original jurisdiction—the Court will decline to exercise its supplemental jurisdiction over any state law claims to the extent the Petition asserts them and will remand those claims back to state court.[46]

### B. Insufficient Service of Process

The Court next turns to Defendant's argument that Plaintiffs' claims should be dismissed for insufficient service of process. Under Fed. R. Civ. P. 4(j)(2), service upon a state or local government defendant who has not filed a waiver of service may be effected by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Under Kansas law, a plaintiff may effect service by return receipt delivery, personal service, or residence service.[47] To serve a county under Kansas law, a plaintiff must serve (1) one of the county commissioners; (2) the county clerk; or (3) the county treasurer.[48] A plaintiff must show that they substantially complied with the applicable service requirements for process to be sufficient.[49] Kansas law defines "substantial compliance" as "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."[50]

Here, Plaintiffs effected service on Becky Matzeder, the Executive Secretary to the Leavenworth County Board of County Commissioners, rather than on a county commissioner, the county clerk, or the county treasurer. That attempt does not satisfy Rule 4(j)(2) or K.S.A. §

---

[46] *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

[47] *See* K.S.A. § 60-303.

[48] K.S.A. § 60-304(d)(1).

[49] *Hueffmeier v. Talentum Empowerment Inst., LLC*, No. 22-CV-2333-JAR-ADM, 2023 WL 6849175, at *4 (D. Kan. Oct. 17, 2023).

[50] *Fisher v. DeCarvalho*, 314 P.3d 214, 219 (Kan. 2013) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 127 P.3d 319, 323 (Kan. 2006)).

60-304(d)(1). Kansas law establishes that "[w]hen the statute designates a particular recipient for process, courts must enforce that statutory procedure."[51] "Allowing [a] plaintiff to serve someone other than those individuals listed in [§] 60-304(d) would violate the clear language of the statute and would not substantially comply with the statutory requirements."[52] Because Plaintiffs served Becky Matzeder rather than one of the statutorily enumerated county officials, they did not substantially comply with the applicable service requirements, and service was therefore insufficient under Rule 4(j)(2) and K.S.A. § 60-304(d)(1).

However, before dismissing a claim for failure to serve process, the Tenth Circuit requires that district courts inquire whether a plaintiff has demonstrated good cause for failing to timely effect proper service.[53] If a plaintiff shows good cause, they are entitled to a mandatory extension of time to effect proper service.[54] But even in the absence of good cause, a court may, in its discretion, still grant a permissive extension of time.[55] Relevant factors for a court to consider when deciding whether to grant a permissive extension include whether a plaintiff is proceeding *pro se*, whether the defendant had actual notice of the lawsuit, the danger of prejudice to the defendant, the length of the delay, and whether the applicable statute of

---

[51] *Rader v. U.S.D. 259 Wichita Pub. Sch.*, No. 10–4118–KHV, 2011 WL 2144834, at *1 (D. Kan. May 31, 2011) (citing *Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)).

[52] *Rivera v. Riley Cnty. L. Bd.*, No. 11-CV-02067-JAR-JPO, 2011 WL 4686554, at *3 (D. Kan. Oct. 4, 2011) (finding that a plaintiff did not substantially comply with K.S.A. § 60-304(d) when the plaintiff did not serve any of the individuals designated to accept service for a government agency under the statute); *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2016 WL 4039613, at *3–4 (D. Kan. July 28, 2016) (holding that a plaintiff did not substantially comply with K.S.A. § 60-304(d)(1) when the plaintiff served a receptionist at the county attorney's office not one of the county commissioners, the county clerk, or the county treasurer); *see Blogref v. Sedgwick Cnty. Sheriff Dep't.*, No. CV 18-2471-KHV, 2019 WL 2174058, at *1 (D. Kan. May 20, 2019) ("[W]hen the statute designates a particular officer to whom process must be delivered and with whom it may be left, . . . no other officer or person can be substituted in her place." (quoting *Knight v. Kansas*, No. 89-2392-0, 1990 WL 154206, at *2 (D. Kan. Sept. 6, 1990)).

[53] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[54] *Id.*

[55] *Id.*

limitations would bar a re-filed action.[56]  "Generally, when the Court finds that service is insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant."[57]

Here, because Plaintiffs have not responded to Defendant's motion to dismiss, the Court finds that Plaintiffs have not shown good cause for failing to effect proper service and thus are not entitled to a mandatory extension.  Nonetheless, the relevant factors support granting a permissive extension in this case: Plaintiffs proceed *pro se*; Defendant has received notice of the lawsuit and has demonstrated, through its present motion, its ability to defend against it; and nothing in the record suggests that permitting re-service would prejudice Defendant, particularly given that Plaintiffs must amend in order to avoid dismissal.  Accordingly, the Court in its discretion quashes service and grants Plaintiffs sixty days from the date of this Order to effect proper service of an amended complaint upon the Board of County Commissioners of Leavenworth County, in accordance with Fed. R. Civ. P. 4(j)(2) and K.S.A. § 60-304(d)(1).  If Plaintiffs fail to timely effect service within the time permitted, this case will be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 4) is **granted with leave to amend within twenty-one (21) days from the date of this Order**.  If Plaintiffs fail to file an amended complaint within the time permitted, this case will be dismissed.

**IT IS FURTHER ORDERED** that if Plaintiffs opt to amend, they shall have **sixty (60) days** from the date of this Order to effect proper service of that amended complaint.  If Plaintiffs fail to timely effect service of the amended complaint within 60 days, this case will be dismissed.

---

[56] *See, e.g.*, *Moore v. Teamsters Local 41*, No. 14-2122-JTM, 2015 WL 859074, at *2 (D. Kan. Feb. 27, 2015); *Hopkins v. Clinton*, No. CV 09-185 JCH/CG, 2009 WL 10665432, at *2 (D.N.M. Oct. 30, 2009).

[57] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 (D. Kan. 2008).

**IT IS SO ORDERED.**

Dated: October 2, 2025

                                       S/ Julie A. Robinson
                                       JULIE A. ROBINSON
                                       UNITED STATES DISTRICT JUDGE